Judge OWSL~Y
delivered the Opinion of the Court.
B~ his last will and testament, made and published in F793, Joseph Byers, after making some special bequests, gave all the rest and residue of his estate, to his brother, Samuel Byers, and the children of his brother John, then deceased; thaL is, to the children of his brother John, one moiety of his estate, and to his brother Samuel, the. other moiety. After making his will, Joseph Byers departed this life, and his will was duly proved and admitted to record in the county court of Fayette~
At the time of his death, Joseph Byers owned two lots of ground in the town of Lexington, Fayette county, one of which, is known by the number of forty-five, and the other is number four, and usually denominated the stone house lot. The title to neither of these lots was in Joseph Byers, at the making of his will, but he he]d at the time an equity in both lots. The trustees for the Lexington Presbyterian Congregation, who held the legal title to the stone house lot, had contracted with James Tompkins to lease the sa~ne for ninety-nine years to him; and Joseph Byers, before the making of his will, by contract with Humphrey Tompkim, had *446 become equitably entitled to the contract,'made with the trustees for the lease. The legal title to the other lot was in John Coburn, but Joseph Byers had also by contract, become equitably entitled to it before the date of his will.
ijalos of the property after Byers’ death.
Purchase from Samuel Byers, and Bod'oy’s claim under it.
The lot number forty-five was purchased by George Anderson, after the death of Joseph Byers, at a public sale made by a sheriff under an execution against a certain Patterson, who was a partner in trade of Joseph Byers at the time of his death, and Anderson afterwards sold the same lot to Samuel and George Trotter. After this, Anderson discovering that there, existed difficulties in the title, he, for a valuable consideration, purchased from the children of John Byers, deceased, their interest in the estate of Joseph Byers, and has since obtained from them deeds of conveyance, and has also procured a conveyance from Coburn, and executed a conveyance of the lot to Samuel and George Trotter, the latter of whom, has also departed this life.
After the death of Joseph Byers, and after his will was admitted to record, Robert Parker, the ancestor of the present appellants, went to Pennsylvania, where Samuel Byers, one of the devisees of Joseph, lived, and purchased from him, and received his bond to convey’ all the interest derived byr him to the estate of his brother Joseph, under his will. The bond was given by Samuel Byers to Robert Parker only, but after the purchase was made, and after the death of Robert Parker, Thomas Bodiey, claiming an equal interest in the purchase from Samuel Byers with Parker, and alleging that he had paid a moiety’ or more of the purchase money, exhibited his bill in the Fayette circuit court, for the purpose of being let into the benefit of the purchase, and for (be purpose of obtaining partition of tbe estate of Joseph Byers, deceased, among those interested therein &c. &e. To this bill, the heirs of Robert Parker, deceased, the trustees of the Lexington Presbyterian Congregation, George Anderson and others, were made defendants.
the county court,
Itocree of the circ['“li,'30"1.'t directin'* a sale and conveyance &c,
.Reversal of the decrecía ca¿.ey’s
Proceeding* pa8e°-nicrilip rúiorsa^here’ Parker’s heirs, their hill for a refiivision.
*447 Before tbe bill was exhibited by Bodlcy, however, it appears that by an application to tbe county court, (in which Parker, Bodlcy, Anderson and the Trotters, all, in some degree, participated,) partition of the two lots was made between them; the lot number forty-five being assigned to Anderson, and the stone house lot assigned to Parker and Bodlcy. The partition so made appears to have been acquiesced in for some time by the parties, and the possessor of each lot enjoyed the use thereof, and made improvements thereon as though it was their exclusive property.
• The suit brought by Bbdley came on finally to be heard, and. an interlocutory decree was pronounced, ordering, among other things, an account to be taken, and directing the stone house lot to be sold &c.
The lot was accordingly sold, and George Anderson became the purchaser, at the price of five thousand dollars. An account was also taken in pursuance to the interlocutory decree, and upon report thereof, the court made a final decree directing Anderson to pay Bodlcy two thousand one hundred and ninety-seven dollars and twenty cents, ami to pay the executors of Robert Parker, deceased, one thousand five hundred and eighty-two dollars and fifty-six cents, being the amount adjudged to be due from Anderson, including the price which he was to pay for the lot, by his purchase under the decree. The court also directed the trustees of the Lexington Presbyterian Congregation to convey the lot to Anderson. The conveyance was accordingly made by the trustees, and Anderson has since paid the amount decreed against him.
After this, the heirs of Parker sued out a writ of error to this court, and. the decree of the circuit court was reversed, and the cause remanded with directions for an account to be taken between Bodley and Parker &c. as may be seen by the opinion of this court, reported in 4 Bibb, 102. ”
Upon the return of the opinion and mandate of this court to the circuit court, Bodlev declined further prosecuting, his cause and his bill was dis *448 missed. Parker’s heirs then moved the court to bo restored to the possession of the lot, but their motion was overruled. A rule was then obtained by the heirs of Parker for cause to be shown why the sale made of the lot under decree should not be set aside; but it does not appear from the record that the rule was ever after acted on by the court.
Answer of the Trotters.
Answer of the heirs of Anderson.
About the time of obtaining the rule, however, the heirs of Parker exhibited their bill against all the parties to the suit which Bodley had previously brought, and some others, and shortly thereafter, but not until a subsequent term after Bodley had discontinued his suit, obtained an order of court, setting aside the dismission of Bodley’s bill and reinstating the same on the docket. The court also, at the same time made an order consolidating the suit of Bodley and that brought by the heirs of Parker.
Parker’s heirs, in their bill, set up, through the purchase of their ancestor from Samuel Byers, a claim to a moity of the estate of Joseph Byers deceased; insist that Bodley is entitled to no interest in that purchase, and rely upon the decision of this court, in the suit brought by Bodley, as conclusive against him. They contend that no regular partition of the lots, between those entitled to them under the will of Joseph Byres, has ever been made, and ask a redi vision, and that an account of the rents &c. accruing upon the lots, be taken, and that a conveyance or conveyances, be decreed for a moity of the lots to them &c.
Samuel Trotter and the heirs of George, he having departed this life, insist upon the partition of the lots, as made through the county court, and the acquiescence and confirmation of the parties thereunder, and rely upon their legal title, derived through Coburn, to protect them in the possession of the lot number forty-five, upon which they allege they have put large, lasting, and valuable improvements.
The heirs of George Anderson, (he having also departed this life) also rely upon the partition first made, connected with the title derived through Co-burn, to protect the possession of the Trotters to *449 lot number forty-five; and they rely, and insist upon the purchase and payment of their ancestor under the decree of the court in the suit brought by Bodley, and the conveyance made in pursuance to the order of the court in that case, by the trustees of the Lexington Presbyterian congregation, to protect them in the possession of the stone house lot, upon which they allege their ancestor has been at great expense in putting lasting and valuable buildings. j
Bodlcy’s answer.
Becree of thfe circuit court, dismissingthg bill of Parker’s heirs, and by Bodley’s consent, his bill again dismissed.
*449 Bodley does not controvert the right of'Anderson to the stone house lot. He repeats the statements made by him in the bill which he exhibited, and on the hearing of which the lot was decreed to-be sold; and although 'the decree was reversed by this court, and by that reversal he was decided not to be entitled to a decree for any part of the real estate of Joseph Byers, deceased, under the purchase made by Robert Parker from Samuel Byers, he insists that it was not on the ground of any defect of justice in his claim the decision was made, but on the ground, that the contract between him and Parker, in relation to that purchase, came within the provision of the act of the Legislature against frauds and perjuries; and he now contends, that as Anderson has obtained the legal title under the decree in that suit, he ought not to be disturbed in his purchase iñ a court of equity, and that the amount received by him from Anderson under that decree, is not more than sufficient to reimburse him the money which he has advanced, under his contract with Robert Parker, in relation to the purchase from Samuel Byers, and the amount expended by him, under that purchase, in relation to the estate of Joseph Byers deceased.
Parker, who is a joint executor with Bodley of the estate of Robert Parker deceased, also answered the bill, but his answer contains nothing worthy of being particularly noticed.
The suit of Parker’s heirs against Anderson’s heirs &c. and that of Bodley against Parker’s heirs &c. both came on to be heard at the same time, and m the case of Parker’s heirs against Anderson’s hems *450 &c. the court decreed the bill to be dismissed, and Bodley not desiring an account to be taken in the suit brought by him, by his consent his bill was also .dismissed.
The court cannot reinstate a cause which had been dismissed at a previous term. Such an order of reinstatement gives the court no power over ibe case.
.Partition made by proceedings in ■ the county court, though informal, having been just, and long acquiesced in, njul improvements made in faith thorc■of — affirmed.
From the deecrec in the case of Parker’s heirs against Anderson’s heirs &c. the heirs of Parker appealed.
The appeal having therefore been taken by the lieirs of Parker to the decree dismissing their bill only, it cannot be necessary, in reviewing that decree, to examine the correctness of the decree which dismissed the bill of Bodley. We would however, barely remark, that the suit of Bodley was not in a situation in which the court could regularly enter upon the consideration and decision of the merits of the claims set up by Bodley. After that cause had been decided by this court, and remanded to the court below, there bad been a discontinuance of it in the circuit court, and it was not until a subsequent term after the discontinuance was entered, that the court made the order setting aside the discontinuance, and again directing the cause to be. placed upon the docket. In making that order, therefore, the circuit court most clearly transcended its lawful power, and cannot have thereby derived any authority to adjudicate upon the merits of the matters drawn in contest in that suit.
And if the suit had not been abandoned by Bodley, it would have been proper to have stricken his cause from the docket, as having been improvidently and illegally before the court.
With respect to the lot number fertv^hve, which is held by the Trotters, there is evidently no reason to complain of the decree which was pronounced against the heirs of Parker. The Trotters hold the legal title under a fair and bona fide purchase, for a valuable consideration, made after there bad been a division of the lots belonging to the estate of Joseph Byers deceased, through the orders of the the county- court of Fayette. That division and partition was not, it is true, made in regular and ■due form of law; hut it is apparent from the record, *451 tliat, no injustice was done to any of the parties inr forested, and that it was assented to, and approved by both Bodley, and the ancestor of the heirs of Parker, one or both of whom held the interest, now claimed by Parker’s heirs, of Samuel Byers in the estate of Joseph Byers, ft would therefore, be palpably unjust, under these circumstances, for a court of equity to interpose and disturb the partition, honestly made, and long acquiesced in by the> persons interested, and to compel the holder of lot -number forty-five, to surrender the legal title, fairly obtained, merely because all the formalities of the law were not complied with in making the original partition. It should not, and cannot be done, consist-, ently with conscience, or the principles or usages of courts of equity.
Reversal of ;i decree ordering the sale of land does not effect the title acquired by the purchaser.at the sale.
Nor arc we of .opinion the court decided incorrectly in refusing to compel the heirs of Anderson to surrender the title of the stone house lot, to the heirs of Parker. That title we have already seen, was obtained by George Anderson, in his lifetime, under the decree of a court of equity, in pursuance to a purchase fairly made, in obedience to the man-. Rate of the court. The heirs of Anderson must,, therefore, be admitted not only to hold the legal title to the lot, but the equitable title also, as sanctioned by the decree of a court of competent jurisdiction. The decree under which both the legal and equitable title was derived, it is true, has since been reversed by the decision of this court; but neither from analogy to legal proceedings, nor the principles and usages of equity, can the reversal of the decree under which the. lot was sold, and the title conveyed, authorize a court of chancery to decree a reconveyance of the title so-obtained. The doctrine is well settled at law, that estate sold under a writ of fieri facias, will be-retained by-the purchaser,, though the judgment upon which the execution issued, may be afterwards reversed; and the rule is the same in equity, where land is sold under the decree of a court of equity, and the decree- is afterwards reversed, After the reversal of a judgment at law, or the decree of a court of equity, the person prejudiced by the decree, is entitled to the *452 proceeds of the estate sold, either under execution upon the judgment, or in obedience to the decree, and it would, no doubt, be competent for a court of law or equity, to compel restitution of the money, for which the estate sold. But both law and equity, guards with, great circumspection, the interest derived by purchasers under the process of courts of law, or the decrees of courts of equity, and unless there be unfairness in the transaction, the title which the purchaser acquires, either by the sale of an officer acting under a fieri facias at law, or the sale of a commissioner, acting under the decree of a court of equity, will never, upon the reversal of a judgment or decree, be djsturbéd.
Rule is the samo whether the purchaser be a party to the judgment or decree or a stranger, and the reversal affects in neither case.
Sales of the lands of infants under an erroneous decree or judgment are not affected by the reversal of the der pisions.
, This rule was, in argument, admitted to he in the general correct, but it was attempted to limit its application to purchasers who are neither parties nor privies to the judgment or decree under rvhich the sale is made'. The reason for such a limitation of the principle, is not, however, perceived by us, and we have met with no adjudged case, either at law or equity, wherein any such exception to the rule has been made. The parties to a judgment or decree, are equally, with all others, at liberty to bid and purchase property, exposed to sale under the authority of á judgment or decree, and there is the same reason for protecting the interest acquired by a party, under a purchase, as that of a stranger.
But if it be true, that parties arc not excepted out of the rule, it was contended that decrees prejudipial to infants, should be; and as some of the heirs of Parker were infants when the sale was made under the decree, to Anderson, it was insisted, that upon the reversal of that decree, they ought to be restored to their right to the lot, as though the decre.e had never been pronounced.. Whether any of the parties ip a decree, be infants or not, there is, however, the same necessity for guarding and protecting the interest of purchasers under decrees, as if they were adults, and we know of no principle that can authorize restitution of lands to infants, when sold by the decree of a court of competent jurisdiction, that would not apply with equal pro ■ *453 pi'iety to persons of full age. If there beany hardship in the rule, it results from the error of the court, and it is perhaps better, find more to the interest of suitors in the general, that the hardship should be borne by the party to whose prejudice the may be, though an infant, than that others should be deterred from buying under the decree of a court of competent jurisdiction, from an apprehension of being deprived of their purchase by some pnisjudgment in the court pronouncing the decree. ’
No party to ^latent eqUityt0tho land ordered to be sold, to th^rev'orsal*1 of the decree,
Petition for a rc-hearing.
Besides, when property is decreed to be sold, by a court of competent jurisdiction, the thought is not to be indulged that either party to the suit has a latent equity to the thing, so that after a sale and conveyance under the decree, the purchaser must be understood to occupy the attitude of a bona fide purchaser, for a valuable consideration, not liable to be overreached by any equity to which the parties to the suit might, by a reversal of the decree, have been entitled, if there had been nq sale of the property.
Upon the whole, we perceive no error in the decree, and it must be affirmed with cost.